IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ZACHERY STONE,

       Plaintiff,

v.

NANCY A. BERRYHILL, Acting of
Commissioner of Social Security[1],

       Defendant.

CIVIL ACTION NO.
1:16-CV-03563-WSD-LTW

## FINAL REPORT AND RECOMMENDATION ON AN
## APPEAL FROM A SOCIAL SECURITY DISABILITY ACTION

Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB"), and an application for Title XVI Supplemental Security Income ("SSI") under the Social Security Act ("the Act"), alleging disability due to arthritis and panic attacks. (Transcript ("Tr.") 37, 198-208, 417). Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her claim.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

On November 5, 2012, Plaintiff filed applications for DIB and SSI alleging disability beginning on September 1, 2005. (Tr. 16, 198-208). Plaintiff's claims were denied initially, and on reconsideration on July 31, 2013. (Tr. 16, 107-08, 137-38). Thereafter, Plaintiff appealed the denial to an Administrative Law Judge ("ALJ") and an administrative hearing was held on February 6, 2015. (Tr. 28-77). At the hearing, Plaintiff amended her alleged onset date to November 5, 2012, which was after the expiration of her date last insured, June 30, 2010. (Tr. 16). In effect, Plaintiff withdrew her request for a hearing with respect to her application for DIB under Title II of the Act, as amended. (Id.). The ALJ noted there was little treatment and no real evidence of a disabling impairment prior to the expiration of Plaintiff's insured status on November 5, 2012, and dismissed Plaintiff's request for hearing on DIB. (Id.).

On June 10, 2015, the ALJ issued an unfavorable decision (the "Decision") on Plaintiff's SSI claim finding that Plaintiff was not disabled. (Tr. 13-22). Plaintiff filed a request for review of the ALJ's Decision on August 5, 2015. (Tr. 8-12). The Appeals Council denied Plaintiff's request for review on July 21, 2016. (Tr. 1-7). Plaintiff, having exhausted all administrative remedies, filed this action on September 22, 2016. (Doc. 3). It is now before the undersigned upon the administrative record, the pleadings, and the parties' briefs, and is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

For the reasons set forth below, this Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED AND THIS ACTION BE DISMISSED**.

2

I.    **STANDARD FOR DETERMINING DISABILITY**

An individual is considered to be disabled for purposes of disability benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and are of such severity that the claimant is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)-(3).

The burden of proof in a social security disability case is divided between the claimant and the Commissioner. The claimant bears the initial burden of establishing the existence of a "disability" by demonstrating that he or she is unable to perform his or her former type of work. Once the claimant has met this burden, the burden shifts to the Commissioner to show that, considering claimant's age, education, work experience and impairment, there are some other types of jobs that exist in the national economy that the claimant can perform. The overall burden, however, rests upon the claimant to prove that he or she is unable to engage in any substantial gainful activity that exists in the national economy. Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

As summarized below, a five-step sequential analysis must be used when

3

evaluating a disability claim.

(1)   The Commissioner must determine whether the applicant is currently working; if so, the claim is denied.

(2)   The Commissioner must determine whether the claimed impairment is severe; that is, whether the impairment or combination of impairments significantly limits the individual's physical or mental ability to do basic work activities; if not, the claim is denied.

(3)   The Commissioner must determine whether the impairment equals or exceeds in severity certain impairments described in the impairment listings in the regulations; if it does, the claimant is automatically entitled to disability benefits.

(4)   The Commissioner must determine whether the applicant has sufficient residual functional capacity to perform past work; if so, the claim is denied.

(5)   The Commissioner must determine, on the basis of claimant's age, education, work experience, and residual functional capacity, whether the applicant can perform any other gainful and substantial work within the economy; if so, the claim is denied.

See 20 C.F.R. §§ 404.1520-404.1576.

## II.   BACKGROUND FACTS

Plaintiff was fifty-six to fifty-eight years old during the relevant period. (Tr. 37). Plaintiff has an eleventh grade education and past relevant work as a cafeteria food service worker and kitchen helper. (Tr. 37, 67-68). Plaintiff last worked in 2005 and initially alleged she became disabled on September 1, 2005, due to arthritis and panic attacks. (Tr. 16, 198-208). During her hearing before the ALJ, Plaintiff amended her onset date and alleged disability as of November 5, 2012, due to a myriad of medical problems. (Tr. 28-77). Specifically, Plaintiff testified she stopped working in 2005

4

because she was experiencing pain. (Tr. 39). The ALJ noted Plaintiff appeared at her hearing with a one-prong cane asserting that she needed it to support her back and hips. (Tr. 19, 40). Plaintiff also testified to experiencing pain in both shoulders (rotator cuff issues made it difficult for her to raise her arms to lift) and her left elbow (was hard to bend and maneuver). (Tr. 39-41). The ALJ noted on the record that Plaintiff was moving her left elbow with a decent range of motion as she was speaking. (Tr. 42). When asked if there was anything else wrong with her physically, Plaintiff responded she was experiencing pain in her shin; she suffered from shortness of breath and anxiety/panic attacks (Tr. 42, 45, 65); sometimes her hands would get stiff, painful, and swell which affects her ability to hold objects and write (Tr. 55); she suffered from depression (Tr. 57); she has problems remembering things that happened a long time ago (Tr. 59); she could not push or pull (Tr. 59-60); she could not lift her arm over her head (Tr. 62); and she experiences vertigo (wakes up and the room is spinning causing her to stay in bed for at least a week) (Tr. 63-64).

After considering Plaintiff's medical records, Plaintiff's testimony, the opinion of a treating physician, and the opinions of state agency consultants, the ALJ found Plaintiff has no medically determinable impairment and was not disabled. (Tr. 18, 21-22). Because the ALJ found Plaintiff was not disabled at the step two of the sequential evaluation process, she terminated her analysis and did not consider or make any findings under steps three (listing of impairments), four (ability to do past relevant work), or five (ability to perform other work in the national economy). The medical

AO 72A
(Rev.8/82)

evidence has been summarized in the body of the decision of the ALJ and will not be repeated here except as necessary to address the issue presented.

## III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE ALJ

The ALJ made the following findings of fact and conclusions of law:

(1)   The claimant last met the insured status requirements of the Social Security Act on June 30, 2010.

(2)   The claimant has not engaged in substantial gainful activity since November 5, 2012, the amended alleged onset date (20 C.F.R. §§ 416.971 et seq.).

(3)   There are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (20 C.F.R. § 416.920(c)).

(4)   The claimant has not been under a disability, as defined in the Social Security Act, from November 5, 2012, through the date of this decision (20 C.F.R. § 416.920(c)).

(Tr. 18-22).

## IV.   CLAIMS OF ERROR

Plaintiff alleges the decision of the Commissioner is in error because the ALJ failed to conclude that Plaintiff has any severe impairments.  (Doc. 14).

## V.   SCOPE OF JUDICIAL REVIEW

The scope of judicial review of the Commissioner's denial of social security benefits is limited.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  The only function of the court is to determine whether there is substantial evidence in the record to support the findings

6

and decision of the Commissioner and whether proper legal standards were applied in the fact-finding process. The Commissioner's findings are conclusive if supported by substantial evidence and proper legal standards were applied. Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th Cir. 1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. Richardson v. Perales, 402 U.S. 389, 401 (1971); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239. "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, review of the ALJ's application of legal principles is plenary. Walker, 826 F.2d at 999.

## VI.   ANALYSIS OF CLAIMS OF ERROR

### A.   Substantial Evidence Supports the ALJ's Finding that Plaintiff Does Not Have a Severe Impairment

Plaintiff argues the ALJ erred in concluding that she does not have any severe impairments. In response, the Commissioner argues substantial evidence supports the

7

ALJ's finding that Plaintiff did not have a medically determinable impairment.  Because the ALJ's decision appears to have been decided under the proper standards and is supported by substantial evidence, this Court is unable to find the ALJ erred by finding Plaintiff did not have any medically determinable impairments.[2]

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.  20 C.F.R. §§ 416.920, 404.1520(c).  This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight.  Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).  Social Security regulations define a "severe" impairment as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."   20 C.F.R. §§ 404.1520(c), 416.920(c).  "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d. 914, 920 (11th Cir. 1984).  A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months.  See 20 C.F.R. §§ 404.1505(a), 416.905(a). Both the impairment(s) and the inability to work must last for at least twelve

---

[2] Although the ALJ found Plaintiff did not have any medically determinable impairments, that finding implicitly includes the finding Plaintiff's impairments were not severe, and the ALJ's rationale for the former conclusion also supports the latter conclusion.

8

consecutive months. See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 416.905(a), 416.909; SSR 82-52, 1982 WL 31376, at *1 (1982); Barnhart v. Walton, 535 U.S. 212, 217-20 (2002). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The claimant bears the burden of providing substantial evidence establishing that an impairment has more than a minimal effect on the claimant's ability to perform basic work activities. See Bridges v. Bowen, 815 F.2d 622, 625-26 (11th Cir. 1987) (per curiam). If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d)-(e), 404.1525, 404.1526, 416.920(a)(4)(iii), 416.920(d)-(e), 416.925, 416.92to 6. Conversely, if the claimant does not have a severe medically determinable impairment, she is not disabled.

In this case, the ALJ concluded Plaintiff was not disabled from November 5, 2012, the amended alleged onset date, through June 10, 2015, the date of the ALJ's decision. (Tr. 18, 21). The ALJ's conclusion was based on her finding that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. (Tr. 18, 21). Plaintiff argues in her Brief that her impairments are pain in her right shoulder; Atelectlasis, a medical condition that can cause problems breathing and on exertion; a severe cardiac condition; chest and back

9

pain; anxiety disorders; and affective disorders.  In support, Plaintiff relies on (1) a questionnaire completed by her treating physician, Dr. Han; (2) treatment notes dated July 24, 2013, through November 17, 2013; (3) a March 19, 2010 EKG of her heart; (4) an x-ray of her lungs on March 20, 2010; (4) assessments by state agency doctors indicating Plaintiff's impairments were anxiety disorders, affective disorders, and panic disorder/agoraphobia; and (5) a consultative evaluation by Dr. Anne Moore.  Despite Plaintiff's arguments to the contrary, the ALJ properly considered the entire record before finding there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment.  (Tr. 18).

In order to be considered a medically determinable impairment, an alleged condition or impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  SSR 96-4p, 1996 WL 374187, at 1 (July 2, 1996).  Although the regulations provide that the existence of a medically determinable impairment must be established by evidence consisting of signs, symptoms, and laboratory findings, under no circumstances may the existence of an impairment be established on the basis of reported symptoms alone.  See 20 C.F.R. §§ 404.1529, 416.929.  No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s).  SSR 96-4p, 1996 WL 374187, at 1.  In claims in which there

10

are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process. (Id.).  Because Plaintiff's conditions were either self-reported, based on her symptoms, or were not supported by medical signs or laboratory findings or the objective medical evidence, the ALJ found Plaintiff failed to provide evidence of the existence of a medically determinable impairment.

### 1.   **Plaintiff's Alleged Mental Impairments**

On March 20, 2010, after being admitted and discharged from Grady Hospital ("Grady") for complaints of chest pain, Plaintiff returned to the hospital and reported she was feeling anxious and did not want to go home.[3]  (Tr. 341).  Plaintiff was diagnosed with panic disorder and prescribed Celexa. (Tr. 339-40).  On March 30, 2010, Plaintiff returned to Grady for a refill of her hypertension medication and reported she has panic attacks, anxiety disorder, some depression, but denied being suicidal.  (Tr.

---

[3] The recitation of this medical fact is based upon the Court's independent review of the record.  A reviewing court may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  In sum, review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985); see also Getty ex rel. Shea v. Astrue, No. 2:10-CV-725-FTM-29SPC, 2011 WL 4836220, at 1 (M.D. Fla. Oct. 12, 2011); Salisbury v. Astrue, No. 8:09-CV-2334-T-17TGW, 2011 WL 861785, at 1 (M.D. Fla. Feb. 28, 2011).  Many of the medical facts noted by the undersigned were referenced, in part, in Plaintiff's brief.  This Court has reviewed and considered those records and throughout this Report and Recommendation, the undersigned may list facts in the record based on the Court's independent review.

352).  Plaintiff was diagnosed with depression/anxiety and prescribed Effexor. (Tr. 350, 352).   On September 2, 2010, Plaintiff returned to Grady with complaints of hypertension. (Tr. 354).  Plaintiff again reported anxiety/panic attacks and requested to be started on Zoloft. (Id.).  Notwithstanding Plaintiff's reported anxiety/panic attacks, her physical examination and review of systems were normal.  (Id.).  On March 15, 2011, Plaintiff presented to the emergency department at Atlanta Medical Center with complaints of shortness of breath and palpitations.  (Tr. 370).  Plaintiff reported a history of hypertension, anxiety and depression.  (Id.).  Although Plaintiff's review of systems was positive for anxiety, on examination, Plaintiff's "Mental Status" was reported to be "appropriate with normal response"; her "Psych: Behavior/mood" was "pleasant and cooperative"; her "Affect" was "calm"; she was "Oriented" to " person, place, and time"; and she did not have any thoughts of harming herself or others.  (Tr. 370-71).  Plaintiff's final diagnosis was anxiety reaction.  (Tr. 371-72).

On July 25, 2011, Plaintiff returned to Atlanta Medical Center with complaints of chest pain, dizziness-vertigo; and headaches.  (Tr. 373).  Plaintiff reported being out of her hypertension medication for a week, and having had vertigo and panic attacks in the past.  (Id.).  On examination, Plaintiff's "Psych: behavior/mood was pleasant and cooperative;" and her "Affect" was calm.  (Tr. 374).  Plaintiff's final diagnosis was chest pain, dizziness-vertigo, and cough.  (Tr. 375-77).  Plaintiff was given a refill of her hypertension medication, prescribed Coriciden for congestion and Zithromax for her cough, and then discharged in stable condition.  (Id.).

Lastly, during the Court's independent and general perusal of Plaintiff's medical record, the Court observed Plaintiff consistently had normal mental status examinations and did not complain of any disabling anxiety or depression. (Tr. 19-21, 430, 449, 457-58, 470, 481, 483, 502, 512, 522). Thus, the bulk of the evidence Plaintiff presented about her depression and anxiety was subjective.

In determining that Plaintiff failed to provide medical evidence to show she has a medically determinable impairment, the ALJ used a number of different sources to reach her determination. First, the ALJ noted Plaintiff's alleged problems with anxiety and depression, and observed that per the medications of record, Plaintiff was only taking Valerian, an herbal preparation for her mental conditions. (Id.). The record supports the ALJ's observation. Although Plaintiff was prescribed medication for her alleged mental impairments, Plaintiff reported only taking Valerian for her nerves because it helped to keep her calm and prevented her from "feeling panic and anxious."[4] (Tr. 289). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987)).

Second, the ALJ noted the record reflects no mental health treatment or counseling even though Plaintiff has access to free or low cost care through Grady. Plaintiff's failure to seek medical assistance for her alleged mental impairment despite

---

[4] Although Plaintiff was prescribed Zoloft, Plaintiff testified she could not function on Zoloft and preferred Valerian. (Tr. 46).

13

have access to low cost for free care may contradict subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits.  Plaintiff did not allege she was unable to access a medical source for mental health treatment, or for follow-up care due to lack of transportation or an inability to afford same.  The lack of treatment for a condition can supply substantial evidence for an ALJ to conclude that condition is not severe.  See Manzo v. Comm'r of Soc. Sec., 408 F. App'x. 265, 269 (11th Cir. 2011).

Third, although Plaintiff relies on the opinion of a consultative examiner, Dr. Anne Moore, and two reviewing State agency consultants, to support her argument that her anxiety and affective disorder are severe mental, the ALJ properly considered and weighed the opinions and provided reasons why the opinions were discounted. Substantial evidence supports the ALJ's decision to do so.

i.    Dr. Anne Moore's Evaluation and Opinion

Plaintiff relies heavily on the opinion of Dr. Moore, an examining psychological consultant, who diagnosed Plaintiff with mental impairments.  The record establishes, however, that the ALJ properly considered and discounted Dr. Moore's January 19, 2013 psychological consultative evaluation of Plaintiff. (Tr. 19, 417-21).  Specifically, the ALJ observed that Dr. Moore indicated Plaintiff's diagnostic impressions were generalized anxiety disorder, moderate; and depressive disorder, NOS (not otherwise specified).  (Tr. 19).  The ALJ also observed that Dr. Moore noted in his report that: Plaintiff was unaccompanied when she took public transportation to the evaluation; Plaintiff reported she takes no medications for her alleged mental heath concerns;

14

Plaintiff lives alone; and Plaintiff is able to navigate her daily responsibilities without difficulty. (Tr. 19-20). The ALJ noted that Dr. Moore's mental status evaluation also revealed that while Plaintiff was a little anxious, she had full orientation and knew the purpose of the evaluation. (Tr. 20). Dr. Moore indicated Plaintiff's concentration was moderately impaired, but her short-term memory was deemed average. (Id.). Although Plaintiff denied hearing voices, made no delusional statements, and her behavior did not indicate the presence of a psychotic thought process, the ALJ also noted Dr. Moore still concluded that:

> [Plaintiff's] ability to interact appropriately with co-workers, supervisors, and the general public was "moderately compromised." (Tr. 20). Her ability to sustain attention, persistence, and [pace] was moderately to markedly compromised as she seemed to become preoccupied with internal distress and was unable to deescalate.

(Id.). The ALJ further noted that Dr. Moore opined that Plaintiff's ability to adapt to normal work stressors was "markedly compromised," as she regularly stopped trying to rise from the bed and often dropped to the floor and crawled rather than walk with her joint pain. (Id.). In affording less weight to the opinion of Dr. Moore, the ALJ indicated that not only did the opinion appear to endorse Plaintiff's subjective recitation of her alleged mental health concerns, but it also was out of line with and unsupported by the remainder of the objective medical evidence of record. (Id.).

A review of Dr. Moore's evaluation shows the ALJ properly noted Dr. Moore appeared to rely heavily on Plaintiff's self-report of her subjective symptoms, which the ALJ found not credible. (Tr. 20). In Dr. Moore's diagnostic justification for her

15

opinion, Dr. Moore noted Plaintiff reported "trying to walk around the house and becom[ing] so discouraged that she drops to her knees and crawls back to the main room." (Tr. 418). Similarly, in the clinical summary and occupational conclusion of the evaluation, Dr. Moore indicated Plaintiff's ability to understand and remember simple and detailed instructions was average to moderately compromised as "evidenced through her forgetting to turn the stove off"; Plaintiff's ability to interact appropriately with co-workers, supervisors, and the general public was moderately compromised, as "[s]he has withdrawn from her social circle and mostly only has contact with a daughter"; and Plaintiff's ability to adapt to normal work stressors was markedly comprised as "[s]he regularly stopped trying to rise from the bed and often dropped to the floor and crawled rather than walk with her joint pain." (Tr. 419). Dr. Moore noted Plaintiff's prognosis was moderate and her condition was treatable. (Tr. 420).

Because the opinion of Dr. Moore appeared to rely heavily on Plaintiff's self-report of her subjective symptoms, which the ALJ found not credible, the ALJ did not err in discounting Dr. Moore's opinion. Notably, Plaintiff does not dispute that the ALJ properly found her less than fully credible, and a physician whose opinion is based upon a discredited claimant's pain reports is also properly discredited. See Majkut v. Comm'r of Soc Sec., 394 F. App'x 660, 664 (11th Cir. 2010). Moreover, the Eleventh Circuit has established that "[o]ne sole mental evaluation that is based on subjective complaints and not on significant clinical findings is not sufficient to establish that the claimant has a mental problem that results in significant limitations, as neither the claimant's

allegations nor unsupported diagnoses are sufficient, in and of themselves, to establish the existence or degree of an impairment." Organaja v. Comm'r of Soc. Sec., 186 F. App'x 848, 850 (11th Cir. 2006) (quoting and affirming the opinion of the district court)

Additionally, in determining Plaintiff did not have a medically determinable mental impairment, the ALJ relied on the opinions of State agency medical and psychological consultants.  Reliance on State agency consultants' opinions is common and ALJs are required to consider any existing State agency consultant reports. See 20 C.F.R. § 416.927(f)(2).  Unless the treating source's opinion is given controlling weight, the ALJ must explain in the ALJ's decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the ALJ must do for any opinions from treating sources, nontreating sources, and other nonexamining sources.  Id.

### ii.    Bobby A. Crocker's Evaluation and Opinion

In discounting the opinion of Dr. Moore, the ALJ gave great weight to the opinion of a consultative internal medicine examiner, Dr. Bobby A. Crocker, who evaluated Plaintiff on January 22, 2013, three days after Dr. Moore's evaluation.[5] (Tr. 20).  The ALJ observed that Dr. Crocker's report indicated a diagnosis of, among other things, panic attacks, and a "questionable history of depression."  (Id.).  Dr. Crocker's evaluation shows Plaintiff reported a history of problems with panic attacks, and that

---

[5] Dr. Crocker's physical examination and opinion of Plaintiff's alleged physical impairments will be discussed more fully in the next section.

she was diagnosed with panic attacks after developing chest tightness and difficulty breathing. (Tr. 428). Dr. Crocker also noted Plaintiff's history of panic attacks per her history and per medical records that were received and reviewed. (Tr. 430). Plaintiff also reported that she gets "anxious at times" and "still has occasional panic attacks." (Tr. 428). Plaintiff's mental status exam, however, showed Plaintiff was oriented to person, place and time; and there was no obvious evidence of depression, retardation, or memory problems. (Tr. 430). The ALJ noted that overall Dr. Crocker reported Plaintiff had "a normal physical examination without any evidence of any physical impairment." (Tr. 20, 430). Because the opinion of Dr. Crocker was consistent with the evidence of record and the ALJ's finding that Plaintiff has no medically determinable impairment, the ALJ did not err in granting more weight to his opinion and discounting Dr. Moore's opinion. The opinion of Dr. Crocker also provides substantial evidence to support the ALJ's decision that Plaintiff does not have a medically determinable mental impairment.

In support of Plaintiff's argument that her anxiety and panic attacks are severe impairments, Plaintiff contends that a state agency doctor, Dr. James Piat, reviewed her file and indicated that her anxiety and affective disorders are severe impairments, and that these impairments were confirmed by a second state agency doctor, Dr. Robert Koontz.[6] Drs. Piat and Koontz are both state agency reviewing psychologists. To the

---

[6] It is not clear exactly which State agency doctor Plaintiff is relying on because Plaintiff only listed the transcript page numbers (Tr. 90, 115) and not the names of the doctors. A review of the record indicates that Plaintiff appears to be relying on the

AO 72A
(Rev.8/82)

extent Plaintiff relies on Drs. Piat and Koontz to support her contention that her anxiety and panic attacks are severe impairments, Plaintiff's reliance is misplaced.

### iii.    Dr. James Piat's Opinion

On February 15, 2013, Dr. Piat reviewed Plaintiff's medical records and noted Plaintiff's impairments were affective disorders and anxiety disorders. (Tr. 91). Dr. Piat opined Plaintiff was mildly restricted in activities of daily living; moderately restricted in maintaining social functioning; moderately restricted in maintaining concentration, persistence, or pace; and she experienced no episodes of decompensation.  (Tr. 90). Although Dr. Piat gave great weight to the opinion of Dr. Moore, he also noted "must differentiate psych from physical factors in weighing cause and severity of limitations." (Tr. 91).   Dr. Piat opined Plaintiff could adequately recall and carry out simple instructions; could sustain concentration, persistence, and pace to complete low stress tasks; and could adequately adapt to perform low stress tasks. (Tr. 92-93).  The ALJ considered the opinions of the State agency consultants and appears to have given the opinion of Dr. Piat and others less weight regarding the severity of Plaintiff's mental health due to Plaintiff's lack of medications, treatment, mental health hospitalizations and/or counseling records. (Tr. 21).  Because Dr. Piat gave great weight to the opinion of Dr. Moore, which relied heavily on Plaintiff's self report and was properly discounted by the ALJ, and because the opinion of Dr. Piat was inconsistent with the record

---

opinion of James Piat because there is a Medically Determinable Impairments and Severity ("MDI") form completed by Dr. Piat on the next page.  (Tr. 90-91). Similarly, Dr. Robert Knootz also completed a MDI for Plaintiff.  (Tr. 114-16).

evidence, the ALJ did not err in discounting Dr. Piat's opinion.

iv.   Dr. Robert Koontz's Opinion

Contrary to Plaintiff's contention, the opinion of Dr. Robert Koontz, supports the ALJ's finding that Plaintiff did not have a medically determinable (mental) impairment. On July 9, 2013, Dr. Koontz, a state agency reviewing psychologist, reviewed Plaintiff's records and indicated there was insufficient psychological information in the file to provide a mental assessment.[7] (Tr. 115). Based on his review of the medical record, Dr. Koontz noted:

> We basically have only 2 sketchy Grady notes re[garding] panic/depression in the context of med[ical] eval[uations] and various stressors - cl[aimant]'s son released from jail. Note in 03-10 notes panic attacks, occ[assional] THC [marijuana], unremarkable MSE [mental status examination]. There is another sketchy Grady note from 9-10 that describes on/off anx[iety] with some depression, Effexor started. Per later Psy CE [psychological consultative examination], cl[aimant] reportedly historically has found psy[chological] meds helpful. Reference made to brief [inpatient] psy admit in 09 but no records forth coming. All we have are these sketchy notes re anx[iety] with some depression in a context of generally intact MSE's [mental status examinations], no [restrictions in] ADL's [activities of daily living], no hx [medical history] of any outpatient psy[chiatric] tx [treatment] during this time frame. These 2 sketchy notes over a 5 year period are insufficient to assess psy.

(Tr. 115-16, 129-30)). Dr. Koontz's conclusion that the record did not contain sufficient evidence of a mental impairment is consistent with the ALJ's decision to discount the

---

[7] As previously noted because Plaintiff appeared to argue the opinion of Dr. Koontz supports her contention that she has mental impairments, the Court will review and address his opinion. The Court also notes that even though the ALJ did not specifically discuss the opinion of Dr. Koontz, she did reference Exhibit 6A which contained a number of opinions, including Dr. Koontz, provided by State Agency consultants. (Tr. 21).

AO 72A
(Rev.8/82)

opinions of Drs. Moore and Piat.  Furthermore, the opinion of Dr. Koontz provides substantial evidence to support the ALJ's finding that Plaintiff does not have medically determinable impairment.

Other evidence in the record also supports the ALJ's decision.  On February 27, 2013, Dr. Terry Banks reviewed Plaintiff's file and noted Plainitiff's diagnosed impairments were anxiety disorder and affective disorders. (Tr. 114). Despite Plaintiff's diagnoses, Dr. Banks also noted the evidence as a whole both medical and non-medical was not sufficient to support a decision on the claim. (Tr. 113, 127). The scant objective evidence, merely established at most that Plaintiff alleged and was diagnosed with depression, anxiety, and panic attacks.[8]  Plaintiff had no objective history of treatment for mental impairments and never sought counseling or hospitalization for her alleged mental impairments. Thus, Plaintiff did not objectively show, with credible evidence, when or how her alleged mental impairments affected her ability to perform basic work skills.

Based on the foregoing, the ALJ provided substantial evidence to support her finding that Plaintiff does not have a medically determinable (mental) impairment.

---

[8] The ALJ noted the Social Security Administration attempted to update Plaintiff's medical records at the initial, reconsideration, and hearing levels. (Tr. 19). The ALJ also noted that if [Plaintiff] did not submit medical evidence needed, [the ALJ] must make a decision based on the information contained in the record. (Tr. 21). Finally, the ALJ further noted that there was no treating opinion from Dr. Han to date, despite efforts to obtain such. (Id.). Thus, to the extent that the record as developed was insufficient to make an assessment of Plaintiff's mental or physical impairments, it appears either the Administration and the ALJ attempted to further develop the record on Plaintiff's behalf.

AO 72A
(Rev.8/82)

Therefore, this Court is unable to conclude the ALJ erred.

### 2.   Plaintiff's Alleged Physical Impairments

Plaintiff also contends that the ALJ erred by failing to find her right shoulder severely limited due to pain; and failed to properly consider the pain in her chest, lower back and hip; her diagnosis of Atelectlasis, a medical condition that can cause problems breathing and on exertion; as well as her severe cardiac condition. Contrary to Plaintiff's contention, the ALJ provided a number of reasons for discounting Plaintiff's allegations of disabling pain and other severe physical impairments and substantial evidence supports the ALJ's decision to do so. The ALJ discounted Plaintiff's allegations of disabling impairments and limitations based on (1) Plaintiff's testimony and presentation during her hearing before the ALJ; (2) Plaintiff's allegations were inconsistent with the opinions of Dr. Crocker and other State agency medical consultants; (3) Plaintiff's allegations were inconsistent with the record evidence; and (4) Plaintiff's allegations lacked credible supporting evidence.

In finding Plaintiff did not have a medically determinable (physical) impairment, the ALJ noted Plaintiff presented at the hearing with a one-prong cane and testified that she can stand for one hour; can walk two blocks, but would experience pain thereafter; can only stand and/or walk two hours total; can sit for two hours total and four hours off and on; can lift two pounds with one or both arms, but would experience pain; cannot bend; can touch her thighs standing, but cannot touch her knees while standing; and she cannot squat. (Tr. 19). On a typical day, Plaintiff testified she experiences pain on a

22

level of nine out of ten, and with medications, her pain is only reduced to eight out of ten. (Id.). Plaintiff alleged the pain affects her ability to focus and that she is unable to vacuum, but can shop for herself if her sister takes her. (Id.). Plaintiff also testified she has osteoathritis with severe pain, along with daily pain requiring her to use heat, cold packs, and medications. (Id.).

The ALJ noted Plaintiff was examined by consultative internal medicine examiner, Dr. Crocker on January 22, 2013. (Tr. 19, 422-30). The ALJ observed Dr. Crocker's report shows diagnoses of chronic low back pain, neck pain, left upper extremity radiculopathy symptoms, panic attacks, and a questionable history of depression. (Tr. 19, 430). In addition to alleging disability due to arthritis and panic attacks, during her evaluation, Plaintiff reported having low back pain that goes into both hips and down to both knees; neck pain that goes down her left arm to her left elbow; pain in her left upper arm, particularly when she raises her left arm; and numbness and tingling in the fingers in both hands. (Tr. 428). Despite Plaintiff's allegations, the ALJ noted on examination Plaintiff's gait was normal, and she could get on and off the examining table without difficulty. (Tr. 20, 429). While the ALJ observed Dr. Crocker indicated Plaintiff required no assistive device to ambulate.[9] (Id.). On examination, Plaintiff exhibited a full range of motion in her joints and had no warmth, tenderness, swelling, scarring, or deformity in her joints; her neck and back showed no muscle spasms, tenderness,

---

[9] Although Dr. Crocker indicated Plaintiff did not need an assistive device to ambulate, the ALJ noted Plaintiff appeared at her hearing with a cane. (Tr. 20).

AO 72A
(Rev.8/82)

scarring or swelling; she had full range of motion throughout her spine; she had 5/5 motor strength throughout all four extremities; she exhibited no muscle atrophy; her cranial nerves were intact; her straight leg raising test was negative, bilaterally; her bilateral grip strength was normal and equal; and she had normal manual dexterity of both hands. (Tr. 429-30). The ALJ further noted that overall, Dr. Crocker reported Plaintiff had a normal physical examination without evidence of any physical impairment. (Tr. 20, 430). The ALJ gave substantial weight to the opinion of Dr. Crocker and concluded that it was well supported by the overall evidence of record. (Tr. 20). The ALJ also gave significant weight to the State agency medical consultants' finding that Plaintiff's physical impairments were nonsevere.[10] (Tr. 21).

The ALJ proceeded to discuss the record evidence. The ALJ indicated that despite Plaintiff's testimony regarding pain and limitations of the shoulders and left elbows, treatment notes from Grady on April 15, 2013, by Dr. Erica J. Han reveal that Plaintiff exercises regularly, engaging in yoga and squats.[11] (Tr. 20, 466). The ALJ also pointed to treatment notes dated July 24, 2013, wherein Dr. Han noted Plaintiff had a full range of motion in all extremities and had good external and internal rotation in her shoulders. (Tr. 20, 471). The ALJ therefore concluded Plaintiff's testimony was less than credible and noted that no one prescribed a cane for Plaintiff and there was no objective evidence

---

[10] On February 23, 2013, another state agency reviewing consultant, Dr. Arthur Schiff also noted Plaintiff's alleged impairments were non-severe. (Tr. 89-90, 95).

[11] It was also noted that Plaintiff does squats with three pound weights without chest pain, and that she exercises at least three to four times a week for half an hour without any chest pain. (Tr. 469).

AO 72A
(Rev.8/82)

to support her allegations of pain and functional limitations, as per Social Security Ruling 96-7p.[12] Thus, the medical records related to Plaintiff's pain and physical health do not indicate Plaintiff's pain or alleged medical conditions[13] were as limiting as she claimed.  Where, as here, the record supports the ALJ's determination that Plaintiff's allegations of disabling limitations were not fully credible, the Court cannot second guess the ALJ.  The Eleventh Circuit has held that credibility determinations are the province of the Commissioner, not the courts.  See Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Bloodsworth v. Heckler, 703 F.2d 1233, 1242 (11th Cir. 1983). Accordingly, because the ALJ adequately supported her credibility determination with evidence from Plaintiff's own statements, as well as objective medical findings from the record and the opinion of an examining medical consultant, the undersigned finds that substantial evidence supports the ALJ's credibility determination.

Finally, Plaintiff argues the record is clear that she has severe impairments and

---

[12] The ALJ has the discretion to discredit a claimant's subjective complaints about his or her symptoms as long as the ALJ considers the entire record and gives specific reasons for the weight given to the claimant's statements.  See SSR 96-7p, 1996 WL 374186, at *1-*2 (July 2, 1996).

[13] The ALJ also discounted Plaintiff's allegations of disabling vertigo. (Tr. 21). The ALJ noted upon questioning Plaintiff regarding the maneuvers that she was routinely advised to do for her vertigo, Plaintiff testified that the exercises worked and she no longer has vertigo. (Id.).  To the extent that Plaintiff alleges the ALJ erred in failing to consider her alleged severe cardiac condition, Plaintiff did not list this impairment in her filing to the agency, and her medical records do not indicate that this was a disabling condition or severe impairment.  As earlier discussed, Plaintiff was able to exercise regularly without experiencing chest pains.  Plaintiff reported she was able to do squats with three pound weights without chest pain, and was able to exercise at least three to four times a week for half and hour without experiencing any chest pain. (Tr. 469).

points to a questionnaire provided by her treating physician, Dr. Han.  On August 23, 2013, Dr. Han completed a Range of Motion Questionnaire.  (Tr. 286).  Dr. Han opined therein that (1) Plaintiff's range of motion in her right shoulder was severely limited due to pain; (2) Plaintiff is not capable of reaching above the level of her shoulders; and (3) Plaintiff's disability may limit her in certain jobs that require physical activity involving her right shoulder.   (Id.).   Although Plaintiff relies heavily on the questionnaire completed by Dr. Han to support her allegations of severe physical impairments, the ALJ properly discounted the opinion of Dr. Han noting that it was unsupported by the medical evidence of record.  (Tr. 20).  In support, the ALJ pointed to Plaintiff's testimony.  The ALJ noted Plaintiff testified Dr. Han provides physical therapy for her right shoulder only; Dr. Han had not taken any x-rays of her shoulder; and although she had an upcoming appointment with Dr. Han, it was not for x-rays. (Tr. 20-21).  Without medically determinable evidence of Plaintiff's alleged shoulder pain, it was reasonable for the ALJ to conclude that Dr. Han's diagnosis was not supported.

Additionally, as earlier discussed, Plaintiff's exercise routine as noted by Dr. Han appears to be inconsistent with Dr. Han's opinion that Plaintiff's range of motion in her right shoulder is severely limited and she is unable to reach above her shoulder.  As the ALJ observed Dr. Han indicated on April 15, 2013, that Plaintiff exercises regularly (at least three to four times per week for half an hour), engaging in yoga and squats (with three pound weights).  (Tr. 20, 469).  Similarly, one month before Dr. Han completed the questionnaire, as noted by the ALJ, Dr. Han's July 24, 2013 treatment notes indicate Plaintiff had a full range of motion in her upper and lower extremities and good internal

26

and external rotation in her shoulders. (Tr. 20, 271). Because Dr. Han's treatment notes were inconsistent with the opinion she provided in the August 23, 2013 questionnaire, inconsistent with the opinion provided by a State agency examining medical consultant, and because of the conservative nature of her recommended treatment, the ALJ did not err in discounting Dr. Han's opinion. "The opinion of a treating physician, such as Dr. [Han], 'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate her reasons." Id. Here, the ALJ did not err in discounting Dr. Han's dire opinion of Plaintiff's functional limitations as it was inconsistent with and contradicted by the objective medical evidence, Dr. Han's own treatment notes, Plaintiff's testimony, and the opinions of the State Agency medical consultants. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Phillips, 357 F.3d at 1240-41.

The ALJ also discounted the opinion of Dr. Han based on the conservative treatment Plaintiff received. The ALJ noted Plaintiff's testimony that Dr. Han only provides physical therapy for her right shoulder and she had not been to physical therapy in four months. (Tr. 21). Plaintiff also testified that Dr. Han is taking a "one thing at a time" approach to her care, which the ALJ noted arguably tends to suggest that the

27

allegations of total disability are not objectively supported by the evidence of record. (Id.). Thus, the ALJ properly discounted Dr. Han's opinion because she provided only routine, conservative treatment. See 20 C.F.R. § 416.927(c)(2)(ii); Newberry v. Comm'r of Soc. Sec., 572 F. App'x. 671, 671-72 (11th Cir. 2014).

Because the ALJ properly discounted Plaintiff's credibility, properly discounted the opinions of Drs. Han, Moore and Piat, properly relied on objective evidence in the record, and the opinions of several psychological/medical examiners and reviewing consultants, support the ALJ's decision, the Court is unable to conclude the ALJ erred.

## CONCLUSION

Based on the foregoing reasons, this Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED AND THIS ACTION DISMISSED**.

**IT IS SO REPORTED AND RECOMMENDED** this __16__ day of January, 2018.

/s/Linda T. Walker
LINDA T. WALKER

28